# CRIMINAL JUSTICE STANDARDS AND TRAINING COMMISSION v. DALE

## Case No. 86-2005

State of Florida, Division of Administrative Hearings

August 8, 1986

### APPEARANCES OF COUNSEL

**Joseph S. White,** Florida Department of Law Enforcement, for petitioner.

**Charles L. Dale,** pro se.

### OPINION

WILLIAM R. DORSEY, JR., Hearing Officer.

## RECOMMENDED ORDER

A final hearing was held in this matter at the Palm Beach County Courthouse on July 10, 1986, before William R. Dorsey, Jr., the Hearing Officer designated by the Division of Administrative Hearings. Petitioner presented the testimony of four witnesses; Respondent called one witness. No exhibits were received in evidence. The parties were granted a period of ten days following the filing of the transcript in which to file proposed recommended orders. After the hearing concluded, the Criminal Justice Standards and Training Commission waived its opportunity to file a proposed recommended order. Mr. Dale filed a post-hearing letter which has been treated as his closing argument.

## ISSUE

The issue in this matter is whether the certificate of Charles L. Dale should be revoked for failure to maintain good moral character under Section 943.1395(5), Florida Statutes (1985) and Section 943.13(7), Florida Statutes (1985).

## FINDINGS OF FACT

1. Charles L. Dale is certified as a correctional officer in the State of Florida under a certificate issued March 14, 1984 (Tr. 35).[1]

2. Charles L. Dale married Cynthia Dale and together they had two children. Mr. and Mrs. Dale separated and Mr. Dale was required by court order to make child support payments to Mrs. Dale (Tr. 10). After he fell behind in those payments he had been ordered to bring them current and a date was set by which he was to produce evidence of having made the payments. (Tr. 12).

3. In July of 1985, the day before the date on which Mr. Dale was to produce receipts for having made the past due payments he met Cynthia Dale and drove her to the courthouse. While they were in the car he asked her to sign a receipt for the child support, but she would not sign it because it had not been paid. (Tr. 12). When she refused to sign the receipt, Mr. Dale put a gun to Cynthia Dale's head to get her to sign the receipts, because he did not want to be jailed for failure to make the child support payments (Tr. 13). Cynthia Dale was in fear that she would be shot if she did not sign the receipt (Tr. 13-14).

4. Mr. Dale ultimately gave up his threats in frustration when Cynthia Dale would not sign the receipt (Tr. 14).

---

[1] References to the transcript filed on July 18, 1986 will be shown as (Tr. ).

**255**

5. Shortly after the incident, Mrs. Dale reported the matter to Officer Kathy Kilpatrick of the West Palm Beach Police Department (Tr. 18). The report in this matter resulted in a communication from the police department to the Palm Beach County Sheriff's Office where Mr. Dale was employed (Tr. 19). The matter was investigated by William Martin of the Palm Beach County Sheriff's Office for violation of departmental rules on improper use of firearms by Mr. Dale (Tr. 22-23).

6. During the investigation by Deputy Martin, Mr. Dale denied that he had pulled his gun, pointed his gun or even touched his gun while with Cynthia Dale, and denied attempting to force her to sign a receipt for child support, although he did admit there had been a dispute regarding back child support payments (Tr. 26). Detective Martin performed a polygraph examination upon Mr. Dale and during the post-test interview discrepancies in Mr. Dale's statement he believed the examination had disclosed (Tr. 28). In that post-test interview, Mr. Dale admitted that he had pointed his gun at Cynthia Dale for about three minutes, after which time he opened the cylinder on the gun thus removing the bullets from the chamber where they could be fired (Tr. 30).

7. The next day Mr. Dale resigned from the Palm Beach County Sheriff's Department (Tr. 31).

### CONCLUSIONS OF LAW

1. The Criminal Justice Standards and Training Commission may "revoke the certification of any officer who is not in compliance with the provisions of Section 943.13(1)-(10), Florida Statutes." See Section 493.1395(5), Florida Statutes (1985). Certificate holders are required to "have a good moral character as determined by a background investigation under procedures established by the Commission." Section 943.13(7), Florida Statutes (1985).

2. The term "good moral character" is not defined by statute. The definition of the term found in Rule 11B-27.011(2)(a), Florida Administrative Code is not applicable because Mr. Dale has not been found guilty of any of the offenses contained in that listing; Rule 11B-27.011(2)(b) incorporates the list found in subparagraph 2(a), and consequently is not applicable here. The rule only appears to set a standard by which employing agencies are able to determine when they are required to send reports of misconduct to the Commission for investigation. It does not, by its terms, establish standards for revocation of a certificate. No controlling statute or rule defines good moral character in a manner applicable to the facts presented here.

256

3. There is no indication in this record that the pistol which Mr. Dale used in the incident was property of the Palm Beach County Sheriff's Office or issued to him in connection with his duties as a corrections officer. The fact that there was an investigation by the Palm Beach County Sheriff's Department indicates that there may have been a violation of that Department's rules involved in Mr. Dale's actions, but no evidence of such a violation was presented; in any event, such a violation was not charged as the basis for revocation here. Mr. Dale's resignation from the Palm Beach County Sheriff's Department may have forestalled any administrative disciplinary action by that agency; if any such action was initiated, it was not proven at the hearing.

4. The Criminal Justice Standards and Training Commission has not promulgated a rule establishing that threatening another with a weapon constitutes a lack of good moral character for which certification may be revoked. Its rules fail to establish standards for determining what acts show a lack of good moral character for which certification will be revoked. The administrative complaint charges that Mr. Dale is guilty of an aggravated assault, but aggravated assault is not even one of the offenses listed in Rule 11B-27.011(2)(a), Florida Administrative Code. Neither was there any evidence of any policy of the Commission showing that what Mr. Dale did constitutes "an egregious act which establishes that the officer is not of good moral character," Rule 11B-27.011(2)(b), Florida Administrative Code.

5. The Supreme Court of Florida defined good moral character for the purpose of determining whether a person is eligible for admission to The Florida Bar in *Florida Board of Bar Examiners Re: G.W.L.*, 364 So.2d 454 (Fla. 1978). The Court found that lack of good moral character is shown by conduct historically found to be moral turpitude, as well as conduct "which would cause a reasonable main to have substantial doubt about an individual's honesty, fairness, and respect for the rights of others and for the laws of the state and nation" *id*, 364 So.2d at 458. The fact presented here reached that level. Mr. Dale's misconduct in a domestic situation raises substantial doubts about his honesty and his respect for the rights of others.

### RECOMMENDATION

It is RECOMMENDED that the certification of Charles L. Dale be revoked.

DONE and ORDERED this 6th day of August, 1986, in Tallahassee, Florida.